AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with jonmore925@yahoo.com and<br>jaclj@yahoo.com that is stored  at premises controlled<br>by OATH HOLDINGS, INC. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No.  19- mj - SS |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:1028(a)(7) | Unlawful Transferring, Possessing or Using a Means of Identification |
| 18:1029 | Access Device Fraud |

The application is based on these facts:

See attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Roger Kirby, Secret Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 29, 2019

_____
*Judge's signature*

City and state:  Baton Rouge, Louisiana

Erin Wilder-Doomes, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH jonmore925@yahoo.com and jaclj@yahoo.com THAT IS STORED AT PREMISES CONTROLLED BY OATH HOLDINGS, INC. | Magistrate No. __19-mj- 55__<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Roger Kirby, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application for a search warrant for information associated with the email accounts identified below and that is stored at premises owned, maintained, controlled, or operated by Oath Holdings, Inc., an email service provider headquartered at 701 First Avenue, Sunnyvale, CA, 94089.   Oath Holdings, Inc. manages records for yahoo.com email accounts. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Oath Holdings, Inc. to disclose to the government copies of the information (including the content of communications) further described in Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.       I am a Special Agent with the United States Secret Service (Secret Service).  I am assigned to the Baton Rouge Resident Office.  I started my career as a Special Agent with the Secret Service in 1999, where I remained until 2013.  From September 2013- September 2017, I worked as a Special Agent with the Treasury Inspector General for Tax Administration.  I

returned to the Secret Service in September of 2017, where I have remained since that time. As a Special Agent with the United States Secret Service, I am tasked with investigating various types of federal crime, including but not limited to access device fraud, financial fraud violations, and counterfeiting of United States currency.

      3.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter. The facts in this affidavit come from, among other things, my personal observations, my training and experience, and information obtained from other agents and witnesses.

      4.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §1028(a)(7) (unlawful transferring, possessing, or using a means of identification) and/or 18 U.S.C. §1029 (access device fraud), have been committed by the person or persons using or receiving information from the subject email accounts. There is also probable cause to search the information described in Attachment B for evidence and/or instrumentalities of these crimes.

## IDENTIFICATION OF EMAIL ACCOUNTS

      5.     The information associated with the following Oath Holdings, Inc. accounts— stored at premises owned, maintained, controlled, or operated by Oath Holdings, Inc., an email service provider headquartered at 701 First Avenue, in Sunnyvale, California—is to be searched:

      a.     jonmore925@yahoo.com

      b.     jaclj@yahoo.com

      6.     There is probable cause to search the information described in Attachment A for evidence and/or instrumentalities of the crimes described in Paragraph 4 above and further described in Attachment B.

## JURISDICTION

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8.      In summary, the United States is investigating **JASON BROWN,** along with other known and unknown co-conspirators for, among other things, **Identity Theft** and **Access Device Fraud.**

9.      On November 2, 2018, Wyndham Garden Hotel Security Officer Michael Crotwell received a phone call from bank card holder Joe Zamora, who resides at 170 W. Hampton Drive, Round Lake, Illinois 67003, stating that someone had fraudulently used his wife, Abbi Zamora's, credit card number ending in 6582 to pay for a hotel room without her knowledge or consent.  The Wyndham Garden Hotel is located at 5600 Bluebonnet Boulevard in Baton Rouge, LA.

10.     After receiving this information, Crotwell immediately contacted the East Baton Rouge Parish Sheriff's Department (EBRSO).  Crotwell told the EBRSO that the offender(s) had used Zamora's bank card number to pay for Room #131 without Zamora's authorization.   Room #131 was later determined to be occupied by three individuals:  Jason Brown, Misty Campbell, and Destiny Charcon. None of the individuals were at the hotel when the EBRSO initially responded.

11.     Later that day, Crotwell alerted the EBRSO that the occupants of Room #131 had returned to the hotel and were driving a silver Toyota Sequoia bearing Tennessee License Plate

number 5K35H4. Crotwell detained a black female, later identified as Destiny Charcon, while waiting for EBRSO deputies to arrive. The other female occupant, later identified as Misty Campbell, fled the scene upon being approached by Crotwell. EBRSO Deputy David Hyer arrived on scene.

12.     Upon arrival, Deputy Hyer advised Charcon of her rights per Miranda, and Charcon stated that she understood. Deputy Toups attempted to locate Misty Campbell.

13.     As Deputy Hyer conducted the post-Miranda interview of Charcon, he noted her person smelled strongly of marijuana. Charcon denied having marijuana, but stated there was Marijuana in the vehicle. She described the exact location of the marijuana and advised it belonged to Misty Campbell. Deputy Hyer determined the vehicle was rented from Hertz, but he did not know who rented the vehicle. Deputy Hyer retrieved the marijuana from the location described by Charcon and while doing so located an illegal credit card skimming device, a MXR X6 Deftun Card Encoder (S/N 0171223259) in plain view in the back of the Toyota Sequoia.

14.     After seizing the marijuana cigarette from the location described by Charcon, the vehicle still smelled of marijuana. Deputy Hyer located an additional vial of marijuana in the front passenger's door, and while doing so noted dozens of credit cards all over the interior of the vehicle.

15.     Deputy Kevin Toups located and detained Misty Campbell, and returned with Campbell to the hotel. Campbell was advised of her rights per Miranda, and stated that she understood.

16.     A subsequent search incident to arrest of Campbell's person found her in possession of an Illinois Driver's License bearing Misty Campbell's photo but the name of Cathryn J Santoro. Campbell also had possession of more than a dozen credit cards and most did

4

not have her name on them.  It was later determined that they were loaded with different data on the magnetic strips than what was displayed on the cards.

17.     Deputy Hyer made contact with Jason Brown, who was returning to the hotel on foot.  Brown accompanied Campbell when she rented the hotel room at the Wyndham Hotel.

18.     For officer safety, Deputy Hyer conducted a weapons pat down of Brown's person and requested to look in a small leather bag he was carrying.  With Brown's permission, Deputy Hyer unzipped the bag and located a Florida Driver's License with the name Derek M. Bell, but bearing the photo of Jason Brown, which was seized as evidence.  Brown was detained in handcuffs and advised of his rights per Miranda.  Brown stated he understood his rights and said the identification card is for Halloween.

19.     Due to the nature of the crimes being investigated, EBRSO Detective Kevin Waguespack and Perry Frith, a sworn member of the U.S. Secret Service Southwest Louisiana Financial Crimes Task Force, were notified and responded to the scene. Upon arrival, Waguespack and Frith were provided the counterfeit identification and credit cards found on Campbell and Brown's persons. Detective Frith utilized a card reader and each card he swiped was found to be re-encoded with a different number than what was displayed on the card.

20.     Detective Frith spoke to Misty Campbell, who stated that "she was the most in charge of this incident but it was nipped in the bud before it really got started." Frith subsequently spoke with Jason Brown.  Brown informed Detective Frith the card numbers re-encoded on the magnetic strip of the cards in their possession were acquired online.  Brown also told Detective Frith that he purchases cards from "an Indian" in Florida and that he interacts with him via email.

21.    Detective Frith also spoke with Destiny Charcon. Charcon was advised of her
rights per Miranda, which she stated she understood and agreed to talk.  Charcon told Frith that
she observed Jason Brown encoding card numbers while sitting in the back seat of the 2018
Toyota Sequoia, Tennessee License Plate number 5K35H4, VIN Number
5TDBY5G13JS159171 (the "vehicle"), while using a black laptop computer.  Destiny Charcon
further advised Detective Frith that two of the backpacks on the back seat of the vehicle
contained multiple re-encoded credit cards.

22.    Jason Brown, Misty Campbell, and Destiny Charcon were all arrested and booked
into the East Baton Rouge Parish Prison on the charge of Monetary Instrument Abuse in
violation of La. R.S. 14:72.2.  Jason Brown and Misty Campbell were also booked on other
related state charges. While being processed by the East Baton Rouge Parish Prison, officers
located an additional 7 credit cards and a Starbucks gift card in Jason Brown's pocket.  Detective
Frith scanned the cards and determined that those cards had also been re-encoded.

23.    Detective Frith submitted a state search warrant for the vehicle.  The on-duty
judge was not available to sign the warrant request.  Detective Frith requested that the vehicle be
stored until the search warrant could be executed.  The vehicle was towed and stored at Smart
Tow in Baton Rouge, Louisiana until the judge signed the search warrant request.

24.    On November 5, 2018, Detective Frith and U.S. Secret Service Special Agent
Roger Kirby contacted Misty Campbell at the East Baton Rouge Parish Jail. Detective Frith
advised Campbell of her rights per Miranda, which she stated she understood and agreed to
speak.  Detectives learned that Campbell is Jason Brown's girlfriend. Campbell admitted to
committing credit card fraud, stating that she knew it was wrong because it was not her bank
card numbers she was using. Campbell told detectives that someone named "Tim" or "Tom" was

6

re-encoding cards for them, and that they found "Tim" or "Tom" online. Campbell also admitted to fraudulently renting the hotel room under the name Cathryn Santoro at the Wyndham Garden Hotel in Baton Rouge.

25.    Also on November 5, 2018, Detective Frith and Special Agent Kirby contacted Destiny Charcon at the East Baton Rouge Parish Jail. Detective Frith advised Charcon of her rights per Miranda, which she stated she understood and agreed to speak.  Charcon explained that there was a black Puma duffel bag in the Toyota Sequoia they occupied. Charcon said the black Puma duffel bag belonged to Jason Brown. Charcon said the bag contained many fraudulent cards. Charcon explained that Jason Brown is in charge of the fraudulent bank card operation. Charcon said she witnessed Jason Brown using the encoder and laptop computer found in the vehicle to get card numbers to re-encode cards in their possession.

26.    Charcon said they obtained cards from a guy referred to as "Goadie" in Chicago before traveling to Baton Rouge. The cards acquired from "Goadie" had the name Cathryn Santoro printed on them.

27.    That same day, Detective Frith and Special Agent Kirby executed the search warrant on the vehicle located at Smart Tow in Baton Rouge. The following items were recovered from the vehicle:

    a.    One black Dell Inspiron 15 Laptop computer (S/N CVXS412) was located on the back seat;

    b.    One re-encoded American Express card with the name Jason Brown and with the physical number 3727-628232 21009 was located in the driver's side door.  The number re-encoded on the magnetic strip was 3739 6907 1571 009;

7

   c.  One Guess 1981 purse was located in front passenger side floorboard and contained: 27-re-encoded cards, 1 genuine debit card, and 18 gift-cards/hotel cards;

   d.  One Black, MSR X6 Deftun Magnetic Strip Reader (S/N 0171223259) in a black box was located in the back seat of the vehicle, which had been previously located by EBRSO Sheriff's Deputies;

   e.  Four blank access cards, 1 head cleaning card, 1 software disc, a Social Security Card in the name of Destiny Charcon, and an Arizona Department of Health Services Patient ID card in the name of Jason Brown, were all located inside the black box containing the magnetic strip reader;

   f.  One black leather backpack was located on the rear seat behind the driver's side which contained: 19 Re-encoded cards; 1 Illinois State Driver's License in the name of David M. Zierler but the photo of Jason Brown; 2 genuine credit cards, one bearing the name of Mathew Moore; 24 gift cards/hotel cards; two iPhones; and one thumb drive and usb cord.

   g.  One black Puma bag was located in the rear driver side floorboard which contained: 27 re-encoded cards; 1 genuine debit card; 18 gift cards/hotel cards; and two iPhones.

28.   Detective Frith contacted Cathryn Santoro by phone. Santoro resides in California. Detective Frith advised Santoro of the Illinois Driver's License containing her name embossed on it. Santoro advised she has never resided in Illinois but the date of birth on the DL, 03/27/1968, is in fact her actual date of birth.

29.     Detective Frith contacted Derek M. Bell by phone. Bell resides at 146 Pennock Landing CR in Jupiter, Florida, which is the name and address listed on the Florida Driver's license found bearing the photo of Jason Brown. Bell does not know Jason Brown and did not give him permission to use his photograph on the fraudulent Florida Driver's license.

30.     Detective Frith submitted search warrants for an examination of the laptop computer retrieved from the vehicle, which was signed by the Honorable Judge R. Anderson of the 19th Judicial District Court on November 9, 2018.  Detective Frith delivered the laptop computer to East Baton Rouge Detective Steve Kemp, a sworn member of the United States Secret Service Southwest Louisiana Financial Crimes Task Force and a Computer Forensic Examiner.

* * *

31.     Beginning on November 9, 2018, Detectives Kemp and Frith conducted a search of the Dell laptop computer seized from the vehicle.  In their preliminary search, they discovered the following relevant evidence, among others:

a.   The name "Santoro," along with American Express card information, in a recovery file and with a link to a website titled "track1generator.com."

b.   The name Derek Collins, a name the appeared on one of the fraudulent IDs seized by officers, in 46 different files on the computer;

c.   Approximately 4,176 credit card numbers in various lists stored on the hard drive;

d.   At least 22 card numbers that had been re-encoded to fraudulent credit cards recovered from the vehicle were found in e-mails and in dump files;

e.   Six email addresses that were sending Personal Identifying Information to the laptop, including names, Dates of Birth, Social Security Numbers, Credit Card

numbers, zip codes, addresses and cities. The following email addresses were identified:

    i.   Joyell Jackson joejoejacks@icloud.com

    ii.   Jon More jonmore925@yahoo.com

    iii.   Rev Crypto CurreNcy CCG revfrank42@gmail.com

    iv.   Lilbro Carder lilbrocarder@icloud.com

    v.   Makayla Hillard thetalorebanks@icloud.com

    vi.   Joe Jacl jaclj@yahoo.com

   f.   Several websites of interest were found on the laptop and are listed below. Vendta.cc is a site that is known to specialize in selling stolen credit card information. VIP Blanks is a site that sells credit card style card stock for imprinting and encoding magnetic strip information.  The sites included:

    i.   https://vendta.cc

    ii.   https://www.trackgen.com

    iii.   https://track1generator.com

    iv.   https://www.vipblanks.com

32.    Detective Kemp created a spreadsheet of the 4,176 card numbers found on the computer, noting the extra track information (that would be used to encode a card), the document it came from (either email or dump list), the email sender, the date and time of the email, and if the card number was also located on a re-encoded card at the scene.

33.    The email address jaclj@yahoo.com sent a card number in 138 separate emails to the laptop between July 19, 2018 and August 5, 2018.  The email address

jonmore925@yahoo.com sent a card number in 459 emails to the laptop between July 19, 2018 and August 5, 2018.

34.     Based on the information examined, Detective Kemp was unable to determine the identities of the individuals sending the personal identifying information via email.

35.     On February 19, 2019, preservation letters were sent to Oath Holdings, Inc. (Yahoo), Apple Inc., and Google requesting the preservation of records and other evidence related to the aforementioned email accounts.

## BACKGROUND CONCERNING EMAIL

36.     In my training and experience, I have learned that Oath Holdings, Inc., provides a variety of on-line services, including electronic mail ("email") access, to the public.  Oath Holdings, Inc. manages the email records for Yahoo.   Subscribers are allowed to obtain an email account at the domain name yahoo.com like the email accounts listed in Attachment A. Subscribers obtain an account by registering with Yahoo.com.  During the registration process, subscribers are asked to provide basic personal information.  Therefore, the computers of Oath Holdings, Inc. are likely to contain stored electronic communications (including retrieved and unretrieved email for Yahoo and information concerning subscribers and their use of Yahoo, such as account access information, email transaction information, and account application information.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

37.     Yahoo subscribers can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Oath Holdings, Inc.  In my

11

training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

38.    In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

39.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

12

40.     In my training and experience, in some cases, email account users will

communicate directly with an email service provider about issues relating to the account, such as

technical problems, billing inquiries, or complaints from other users.  Email providers typically

retain records about such communications, including records of contacts between the user and

the provider's support services, as well as records of any actions taken by the provider or user as

a result of the communications.  In my training and experience, such information may constitute

evidence of the crimes under investigation because the information can be used to identify the

account's user or users.

41.     This application seeks a warrant to search all responsive records and information

under the control of Oath Holdings, Inc., subject to the jurisdiction of this court, regardless of

where Oath Holdings, Inc. has chosen to store such information.  The government intends to

require the disclosure pursuant to the requested warrant of the contents of wire or electronic

communications and any records or other information pertaining to the customers or subscribers

if such communication, record, or other information is within Oath Holdings, Inc.'s possession,

custody, or control, regardless of whether such communication, record, or other information is

stored, held, or maintained outside the United States.

42.     As explained herein, information stored in connection with an email account may

provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct

under investigation, thus enabling the United States to establish and prove each element or

alternatively, to exclude the innocent from further suspicion.  In my training and experience, the

information stored in connection with an email account can indicate who has used or controlled

the account.  This "user attribution" evidence is analogous to the search for "indicia of

occupancy" while executing a search warrant at a residence.  For example, email

13

communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

14

## **CONCLUSION**

43.      Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Oath Holdings, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Roger Kirby
Special Agent
United States Secret Service

Subscribed and sworn to before me on _____ April 29 _____, 2019.

HONORABLE ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

15

## **ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with **jonmore925@yahoo.com** and

**jaclj@yahoo.com** that is stored at premises owned, maintained, controlled, or operated by Oath

Holdings, Inc., a company headquartered at 701 First Avenue in Sunnyvale, California.

## ATTACHMENT B

### Particular Things to be Seized

I.      **Information to be disclosed by Oath Holding, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any messages, emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to the request made under 18 U.S.C. § 2703(f) on February 19, 2019, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account from July 1, 2018 to November 5, 2018, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      All records or other information regarding the devices associated with, or used in connection with, the account, including serial numbers, Unique Device Identifiers ("UDID"),

Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control

("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers

("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers

("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"),

Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International

Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities

("IMEI");

      d.     The types of service utilized;

      e.     All records pertaining to communications between the Provider and any person

regarding the account, including contacts with support services and records of actions taken; and

      f.     The contents of all files and other records stored by any individual using the

account, including address books, contacts and buddy lists, chat content, calendar data, pictures

and files;

      g.     All records and information regarding locations where the account or devices

associated with the account were accessed;

      h.     For all information that falls within the scope of (a) through (g) above, the

physical location or locations where the information is stored.

      i.     The Provider is hereby ordered to disclose the above information to the

government within **14 days** of the issuance of this warrant.

Furthermore, if for any reason the Provider withholds any information that falls within

the scope of (a) through (i) above, the Provider shall notify the government, within **14 days** of

the issuance of this warrant, that information has been withheld and state the basis for the

withholding.

**II.     Information to be seized by the government**

The information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §1029 (Access Device Fraud) and/or 18 U.S.C. §1028(a)(7) (Identity Theft), those violations involving **JASON BROWN, MISTY CAMPBELL**, and **DESTINY CHARON,** or others, including unknown co-conspirators, and occurring after July 1, 2018, for each account or identifier listed on Attachment A, information pertaining to the following matters:

1.     Evidence indicating how and when **jonmore925@yahoo.com** and/or **jaclj@yahoo.com** was accessed or used, and by whom, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the email account owners;

2.     Evidence regarding the identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s);

3.     The identity of the person(s) associated with **jonmore925@yahoo.com** and/or **jaclj@yahoo.com**, about matters relating to Paragraph 31 above, or violations of 18 U.S.C. § 1029 (Access Device Fraud) or 18 U.S.C. 1028(a)(7) (Identity Theft), including records that help reveal their whereabouts;

4.     Email communications between the user/users of the accounts listed in Attachment A and Jason Brown, Misty Campbell, Destiny Charcon or other known and unknown co-conspirators, about:

       **a.**  Credit card numbers;

       **b.**  Personal identifying information, such as names, dates of birth, and social security numbers;

    **c.** Efforts to re-encode or re-program credit cards or access devices on the software and/or hardware required to do so;

    **d.** Methods or means to obtain false or fictitious credit cards, access devices, or identification documents;

    **e.** Purchases and financial transactions made using account information belonging to other individuals; and

    **f.** Other issues related to violations of 18 U.S.C. § 1029 (Access Device Fraud) or 18 U.S.C. 1028(a)(7) (Identity Theft).

5. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information).



AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with jonmore925@yahoo.com and<br>jaclj@yahoo.com that is stored at premises<br>controlled by OATH HOLDINGS, INC. | )<br>)<br>)<br>)<br>)<br>)    Case No.   19- mj-55 |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before ___May 10, 2019___ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Erin Wilder-Doomes_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____

Date and time issued:     April 29, 2019 , 5:15pm                   *Erin Wilder-Doomes*
                                                                              *Judge's signature*

City and state:     Baton Rouge, La.                    Erin Wilder-Doomes, Magistrate Judge
                                                                              *Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with **jonmore925@yahoo.com** and

**jaclj@yahoo.com** that is stored at premises owned, maintained, controlled, or operated by Oath

Holdings, Inc., a company headquartered at 701 First Avenue in Sunnyvale, California.

### ATTACHMENT B

#### Particular Things to be Seized

**I.      Information to be disclosed by Oath Holding, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any messages, emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to the request made under 18 U.S.C. § 2703(f) on February 19, 2019, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account from July 1, 2018 to November 5, 2018, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      All records or other information regarding the devices associated with, or used in connection with, the account, including serial numbers, Unique Device Identifiers ("UDID"),

Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control

("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers

("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers

("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"),

Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International

Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities

("IMEI");

       d.     The types of service utilized;

       e.     All records pertaining to communications between the Provider and any person

regarding the account, including contacts with support services and records of actions taken; and

       f.     The contents of all files and other records stored by any individual using the

account, including address books, contacts and buddy lists, chat content, calendar data, pictures

and files;

       g.     All records and information regarding locations where the account or devices

associated with the account were accessed;

       h.     For all information that falls within the scope of (a) through (g) above, the

physical location or locations where the information is stored.

       i.     The Provider is hereby ordered to disclose the above information to the

government within **14 days** of the issuance of this warrant.

     Furthermore, if for any reason the Provider withholds any information that falls within

the scope of (a) through (i) above, the Provider shall notify the government, within **14** days of

the issuance of this warrant, that information has been withheld and state the basis for the

withholding.

**II.      Information to be seized by the government**

The information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §1029 (Access Device Fraud) and/or 18 U.S.C. §1028(a)(7) (Identity Theft), those violations involving **JASON BROWN, MISTY CAMPBELL,** and **DESTINY CHARON,** or others, including unknown co-conspirators, and occurring after July 1, 2018, for each account or identifier listed on Attachment A, information pertaining to the following matters:

1.      Evidence indicating how and when **jonmore925@yahoo.com** and/or **jaclj@yahoo.com** was accessed or used, and by whom, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the email account owners;

2.      Evidence regarding the identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s);

3.      The identity of the person(s) associated with **jonmore925@yahoo.com** and/or **jaclj@yahoo.com**, about matters relating to Paragraph 31 above, or violations of 18 U.S.C. § 1029 (Access Device Fraud) or 18 U.S.C. 1028(a)(7) (Identity Theft), including records that help reveal their whereabouts;

4.      Email communications between the user/users of the accounts listed in Attachment A and Jason Brown, Misty Campbell, Destiny Charcon or other known and unknown co-conspirators, about:

      **a.**  Credit card numbers;

      **b.**  Personal identifying information, such as names, dates of birth, and social security numbers;

    **c.**  Efforts to re-encode or re-program credit cards or access devices on the software and/or hardware required to do so;

    **d.**  Methods or means to obtain false or fictitious credit cards, access devices, or identification documents;

    **e.**  Purchases and financial transactions made using account information belonging to other individuals; and

    **f.**  Other issues related to violations of 18 U.S.C. § 1029 (Access Device Fraud) or 18 U.S.C. 1028(a)(7) (Identity Theft).

5. Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information).